WARREN COMMISSION & INVESTMENT COMPANY, Respondent, v. HULL REAL ESTATE COMPANY et al., Defendants; STANDARD STAMPING COMPANY, Appellant.

St. Louis Court of Appeals, October 16, 1906.

1. REAL ESTATE BROKERS: Authority of Agent. Where the agent of the owner of real estate, with authority to sell, agreed with a second broker that the latter might sell the property and receive half the commission, and where the owner was apprised of the arrangement and ratified it by recognizing the second broker as his agent authorized to sell, the second broker, having negotiated a sale, could recover from the owner the half commission agreed upon.

2. ———: Change of Terms. And in such case, where the letter giving the second broker authority to sell, stated the terms which were "subject to change at any time," but the sale was negotiated before any change was made or suggested, the owner could not defeat an action for commission by making a change in the terms after being apprised of the sale.

3. PRACTICE: Demand: Interest. In an action for commission for selling real estate, where no demand was shown before the bringing of the suit, the plaintiff could only recover interest from the commencement of his suit.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

AFFIRMED. *si.*

*Perry Post Taylor* for appellant.

(1)   There was no evidence that Hull had any authority except as agent to sell the property, and therefore, even if it should. be conceded that he attempted to bind appellant in a promise to pay respondent a commission, such .attempted agreement would not be binding on appellant.   Tiffany on Agency, p. 462; Atlee v. Fink, 75 Mo. 103; Homan v. Ins. Co., 7 Mo. App. 25; Jenkins v. Funk, 33 Fed. Rep. 915.   (2)   The most liberal (for plaintiff) construction to be put upon all the evidence is that plaintiff was Hull Co.'s sub-agent and the only person to whom it could look for its pay is Hull or his company.   Hill v. Morris, 15 Mo. App. 330.   Hull was plaintiff's employer and to Hull it must look for its pay.   23 Am. and Eng. Ency. of Law (2 Ed.), p. 930; Mechem's Agency (Ed. 1889), secs. 197 and 690.   (3)   The statement or petition filed does not set forth interest as an item of the account, nor does it pray or ask for interest, hence the court erred in allowing interest, at least, for any period prior to the filing of the suit.   Shinn v. Woodson, 95 Mo. App. 6; Patterson v. Glass Co., 72 Mo. App. 499; Shockley v. Fischer, 21 Mo. App. 557.

*Jones, Jones & Hocker* for respondent.

(1)   The testimony clearly shows that Hull was the absolute agent of defendant; to such extent, indeed, that it acted with respect to this property altogether in accordance with the wishes and judgment of Hull.   Acting under this authority Hull made the agreement with plaintiff, for the violation of which plaintiff sues.   The court found this as a fact and the evidence abundantly supports it.   In a law case the finding of the court is equivalent to a special verdict and must stand if. there be any evidence to sustain it.   Freeman v. Moffitt, 119 Mo. 280.   (2)   Defendant did not have the right to

change the price, after the plaintiff had procured the purchaser and offered to close the deal. On the terms proposed it was incumbent upon the defendant to notify the plaintiff of any change in price before the plaintiff offered to conform with the authorities. The contract giving the defendant the right to change the price at any time gave him no more than the law gave him, but the right under the authorities must be exercised before the purchaser is found. 19 Cyc., p. 193 (Factors and Brokers) ; Jones v. Berry, 37 Mo. App. 125.

STATEMENT.—In 1902, the defendant company, a corporation, was the owner of certain real property situated on Second street, in the city of St. Louis. About the first of the year, 1902, it appointed the Leon L. Hull Real Estate Company, a corporation, as its agent to sell the property at a minimum price of thirty thousand dollars. On August 30, 1902, Thomas Warren, president of the plaintiff company, a corporation, wrote defendant, inquiring if its property on Second street was for sale, and if so to give price at which it was willing to dispose of the same, including a commission of two and one-half per cent. Defendant referred this letter to the Hull Company, and it was answered over the telephone by Leon Hull, president of the company, who gave plaintiff to understand that the price was thirty thousand dollars, but added, "You want two and one-half per cent commission." Warren replied that "as between agents," he was perfectly willing to divide the commission with the Hull Company, as usual, and asked Hull to write and give details as to frontage, etc. On September 27, 1902, plaintiff received the following letter from the Hull Company:

"St. Louis, Mo., Sept. 27, 1902.
"Warren Commission & Investment Company,
    "Second and Pine street, City.
    "Gentlemen: Referring to yours of the twenty-sixth inst., in reference to premises on North Second street,

of the Standard Stamping Co., the lease that is now on the premises runs until May 1, 1906, at the yearly rent of $3,000. The dimensions of the lot, as we believe you know, are 68x140 feet. Taxes about $300. Our present price is $30,000, subject, however, to change at any time. The lease is made to the house of Sydney Shepard and Company, which makes it as good as a government bond, and the property brings in a handsome percentage upon the price for which it can be bought.

"We are very truly yours,

"Leon L. Hull Real Estate Co.,

"Leon L. Hull, President."

Thereafter the Warren Company was offered other city property in exchange for the Second street property, and at another time it received an offer to buy the property at thirty thousand dollars, one-half the purchase price to be paid in stock of the St. Louis Cotton Compress Company. Both these offers were turned down. Finally, on the morning of the eighteenth of November, 1902, plaintiff negotiated a sale of the property to James Y. Lockwood for thirty thousand dollars, on the usual terms, and received Lockwood's check on the American Exchange Bank for five hundred dollars, payable to the defendant company, as earnest money. On receipt of the check, Warren immediately went to the office of the Hull Company and offered the check to Leon L. Hull. Hull declined to receive the check, but said to Warren that he would call up Mr. Wiegand, president of the defendant company, and have him take lunch with him, sign a receipt for the earnest money, and would call up Warren about 2 p. m., so he could return with the check. Hull did not call up Warren, but late in the afternoon of the same day Warren called up Hull, who informed him there was a little hitch in the matter but he would get it straightened out in two or three days. Warren then secured a certified check for five

hundred dollars and transmitted it in a letter to the Hull Company, who returnel it to plaintiff. Warren then went to the defendant's office and offered the certified check to Wiegand, who also refused to receive it, but referred Warren to Hull, informing him that the Hull Company was the accredited agent of the defendant with respect to the sale of the property. Warren repeated this information to Hull over the telephone and was informed by him that nothing could be done.

The evidence shows that Lockwood was abundantly able to pay for the property and was ready and willing to purchase it at thirty thousand dollars. The evidence of Wiegand shows that after he was informed that plaintiff had negotiated a sale of the property to Lockwood, a meeting of the board of directors of the defendant company was held, at which it was agreed that the property was worth more than thirty thousand dollars and that the company would not consummate the sale.

The suit was commenced before a justice of the peace to recover one and one-forth per cent on thirty thousand dollars, the agreed purchase price of the property. The Hull Company and Leon L. Hull were made parties defendant. In due course the case was appealed to the circuit court, where the action was dismissed as to the Hull Company and Leon L. Hull, whereupon a trial *de novo* was had to the judge, sitting as a jury, who, after hearing the evidence and declaring the law of the case, found the issues for plaintiff and assessed its damages at four hundred and thirty-five dollars, from which judgment defendant appealed to this court.

BLAND, P. J. (after stating the facts.)—1. At the close of plaintiff's evidence and again at the close of all the evidence, defendant offered an instruction in the nature of a demurrer to the evidence. The court refused to grant either of these instructions. This ruling is assigned as error on the ground that there is no evidence tending to show that plaintiff was authorized to sell the

property as the agent of defendant. The evidence is all one way, and in fact it appears by defendant's evidence, that the Hull Company was the authorized agent of the defendant to sell the property, and that the Hull Company, through its chief officer, agreed with plaintiff that it might sell the property and receive, as compensation for its services, one-half the usual commission of two and one-half per cent of the selling price, and that the defendant was not only apprised of this arrangement but ratified it by recognizing plaintiff as its authorized agent to sell the property. A sale was negotiated by plaintiff on the terms and for the price agreed upon, and while the Hull Company's letter of September twenty-seventh stated the terms of the sale were subject to change, no change was made or suggested until after the sale was negotiated, too late to defeat plaintiff's claim for the agreed commission. It is also contended that plaintiff's contract was with the Hull Company and not with defendant, and that it should look to the Hull Company for its commission. This would be so but for the fact the contract made by the Hull Company with the plaintiff was ratified and adopted by defendant.

2. The evidence fails to show that plaintiff made any demand on defendant for the amount sued for (three hundred and seventy-five dollars) prior to the commencement of the suit. The court, nevertheless, allowed interest from the date the commission became due, amounting to sixty dollars. This was error. [Shinn v. Wooderson, 95 Mo. App. 6, 75 S. W. 687; Patterson v. Missouri Glass Co., 72 Mo. App. 492.] The commencement of the suit before the justice, however, was a sufficient demand to entitle plaintiff to interest from that date. The suit was commenced November 27, 1902, and judgment was rendered in the circuit court on June 2, 1903. The interest from the date of the commencement of the suit to the rendition of the judgment, at the legal rate, on three hundred and seventy-five dollars would

be eleven dollars and thirty-five cents. Therefore, the judgment is for forty-eight dollars and fifteen cents more than plaintiff is entitled to recover, wherefore it is considered that unless within ten days from the date of the filing of this opinion the plaintiff remit forty-eight dollars and fifteen cents, the judgment will be reversed and the cause remanded; if a timely remittitur be entered the judgment for the remainder, three hundred and eighty-six dollars and eighty-five cents will stand as affirmed. All concur.